UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

I<small>MEN</small> G<small>ABRIEL</small> O<small>MAR</small>-H<small>ILL</small>,

        Plaintiff,

v.

C<small>ATHERINE</small> B<small>AUMAN</small> et al.,

        Defendants.
_____/

Case No. 2:20-cv-17

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Bauman and Prunick for failure to state a claim. The Court also will dismiss for failure to state a claim Plaintiff's access-to-the-courts and due process claims against Defendant Neayeart. Plaintiff's retaliation claim against Defendant Neayeart will remain in the case.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LRF officials: Warden Catherine Bauman; Prison Counselor K. Prunick; and Resident Unit Manager J. Neayeart.

Plaintiff's complaint is not a model of clarity. However, read with the facts attached to his prison grievance (ECF No. 1-1, PageID.7), it appears that Plaintiff sent the transcript of his Saginaw County trial proceedings to the law library for copying in December 2019. Plaintiff alleges that he wanted the photocopies for use in his ongoing research related to his criminal case. His transcripts, however, were not returned to him. Instead, prison officials allowed another inmate named "Hill," Nathaniel Lamar Hill, to sign off on the return of the documents.

On December 29, 2019, Plaintiff filed a grievance about not receiving his transcripts and photocopies. He alleged in his grievance that he had contacted the library, but he had received no response. He then kited Defendant Prunick. Plaintiff alleges that he received no written response from Prunick, but he received a photocopy receipt for the legal work, showing that it had been signed (by another prisoner). Plaintiff sought an investigation and alleged that prison officials had been negligent in their handling of his legal documents.

Plaintiff appears to allege that his cell was ransacked repeatedly after his grievance, apparently to determine whether Plaintiff actually had his transcripts. Defendant Neayeart called Plaintiff to his office, informing Plaintiff that Nearyeart believed that Plaintiff had entered into a scheme with inmate Nathaniel Hill to cause difficulties for the officer who made the mistake.

Defendant Neayeart told Plaintiff that, if there was a scheme, there would be consequences, such as interference with Plaintiff's phone privileges and JPay, as well as reference to the parole board.

On January 25, 2020, Plaintiff was approached by inmate Nathaniel Hill, who informed Plaintiff that he had been the one to sign the receipts for the photocopies, but he insisted that he had not taken Plaintiff's paperwork from the prison counselor's office. Nathaniel Hill informed Plaintiff that he had been called in by the resident unit manager, who made threats and other unprofessional comments, similar to those by Defendant Neayeart toward Plaintiff. Nathaniel Hill then asked Plaintiff if he would sign off on his grievances, because he feared further intimidation. Plaintiff agreed, and he then informed the reporting official that he would sign off on the grievances because he was tired of the harassing and threatening conduct.

According to the attached grievance form, Plaintiff signed off on the grievance on January 23, 2020, indicating that he had resolved his grievance at Step I, which contained the explanation, "The prisoner has received his documents and is satisfied with the results." (*Id.*, PageID.6.) Prison Counselor Masters (not a Defendant) was the respondent on the grievance and completed the grievance form on January 24, 2020. Defendant Naeyaert reviewed the grievance response and signed it on January 27, 2020.

In his complaint, Plaintiff alleges that Defendants engaged in grossly negligent conduct in the handling of Plaintiff's legal materials. Although Plaintiff alleges that his transcripts were negligently handled, he does not contend that he never received them. Plaintiff also alleges that Defendant Neayeart retaliated against him for filing a grievance.

Plaintiff seeks injunctive relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**III. Lack of Allegations**

Plaintiff names Warden Catherine Bauman as a defendant, but makes no allegations about any action or inaction taken by her that caused Plaintiff injury.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to even mention Defendant Bauman in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intended to allege that Defendant Bauman was responsible for the actions of her subordinates, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendant Bauman engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### IV. Handling of Legal Materials

Plaintiff alleges that Defendants Prunick and Nearyeart were grossly negligent in the handling of his legal materials, specifically, his trial transcripts. He contends that he needed the transcripts in order to present a defense in the criminal cases underlying his incarceration.

Plaintiff arguably raises an access-to-the-courts claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Although Plaintiff suggests that the temporary misplacement of his transcripts violated his right to access the courts, he utterly fails to allege facts demonstrating actual injury to his pursuit of a challenge to his criminal convictions. Moreover, a review of the trial court records for the convictions on which he remains confined show no pending challenge that was delayed or lost by the misplacement of Plaintiff's transcripts. *See People v. Omar-Hill*, No. 12-037592-FH (Saginaw Cty. Cir. Court), https://secure.saginawcounty.com/CourtInformation/CriminalDetail.aspx?CaseKey=0000304645; *People v. Omar-Hill*, No. 12-036858-FC (Saginaw Cty. Cir. Court, https://secure.saginawcounty.com/CourtInformation/CriminalDetail.aspx?CaseKey=000029827). Moreover, Plaintiff exhausted his appeals in the Michigan Supreme Court on May 1, 2018, long before the alleged interference. *See People v. Omar-Hill*, No. 156681 (Mich. May 1, 2018), http://publicdocs.courts.mi.gov/sct/public/orders/156681_63_01.pdf. Because Plaintiff fails to allege facts demonstrating actual injury, he fails to state a claim that any Defendant's action violated his right to access the courts.

Plaintiff also appears to suggest that he was temporarily deprived of his property without due process, in violation of the Fourteenth Amendment. Plaintiff's factual allegations suggest that Defendants acted with negligence only. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence.") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350.

Although Plaintiff claims that Defendants' actions were grossly negligent, he recites no allegations indicating the sort of arbitrary deprivation that would implicate due process. "The mere allegation of gross negligence – or the use in the pleadings of any other 'vituperative epithet,' for that matter – will avail the plaintiff nothing . . . if the facts alleged are not sufficient to make out a constitutional violation." *Llewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 349 (6th Cir. 1994); *see also Jones v. Sherrill*, 827 F.2d 1102, 1106 (6th Cir. 1987) ("Negligence does not become 'gross' just by saying so."). Instead, "[t]he facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge government officials with outrageous conduct or arbitrary use of government power." *Id.* Here, Plaintiff alleges no more than that Defendants mistakenly allowed another prisoner named Hill to sign for his transcripts or copies. Such allegations state a claim for negligence only. As a

9

consequence, the Plaintiff fails to state a procedural due process claim based on the misstatement of his prisoner trust account.

Finally, to the extent that Plaintiff alleges that he was permanently deprived of his property without due process, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. 327. Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan

law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

For all these reasons, Plaintiff fails to state a claim arising out of the handling of his transcripts by either Defendant Prunick or Neayeart. Because Plaintiff makes no other allegations against Defendant Prunick, his complaint against Defendant Prunick will be dismissed for failure to state a claim.

## V.     Retaliation

Plaintiff alleges that Defendant Neayeart retaliated against him for filing a grievance about his missing transcripts. Plaintiff alleges that Defendant Nearyeart made threats, authorized multiple cell searches, harassed Plaintiff, and threatened to report Plaintiff to the parole board unless he dropped his grievance.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

11

Upon initial review, the Court concludes that Plaintiff's allegations are minimally sufficient to state a claim against Defendant Nearyeart.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Bauman and Prunick will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's access-to-the-courts and due-process claims against Defendant Nearyeart. Plaintiff's retaliation claim against Defendant Nearyeart remains in the case.

An order consistent with this opinion will be entered.

Dated:  March 18, 2020                                       /s/ Paul L. Maloney
                                                                               Paul L. Maloney
                                                                               United States District Judge