UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IMEN GABRIEL OMARHILL #851731,                    Case No. 2:20-cv-00017

        Plaintiff,                                 Hon. Gordon J. Quist
                                               U.S. District Judge

    v.

CATHERINE BAUMAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a civil rights action brought by state prisoner Imen Gabriel OmarHill pursuant to 42 U.S.C. § 1983.  OmarHill's remaining claim is that Defendant J. Neayeart retaliated against him after he filed a grievance about not having his transcripts and copies returned to him after he provided them to the law library for photocopying.  OmarHill says that because he filed a grievance asserting that he had not received his transcripts from the law library, Defendant Neayeart made threats, authorized multiple cell searches, harassed him, and threatened to report him to the parole board unless he dropped his grievance.

Defendant Neayeart filed a motion for summary judgment; OmarHill has responded; and Neayeart has replied.  (ECF Nos. 15, 23, and 24.)  The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the motion for summary judgment and dismiss this case.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[1]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. \_\_\_, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed

to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-

6

grievable, and therefore not subject to the grievance procedure, and then turn around

and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it

too.").

When prison officials waive enforcement of these procedural rules and instead

consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and
> therefore does not exhaust his administrative remedies under the
> PLRA—when he does not specify the names of each person from whom
> he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th
> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the
> manner the State provides—by, say, identifying *all* relevant
> defendants—not only furthers [the PLRA's] objectives, but it also
> prevents inmates from undermining these goals by intentionally
> defaulting their claims at each step of the grievance process, prompting
> unnecessary and wasteful federal litigation process."). An exception to
> this rule is that prison officials waive any procedural irregularities in a
> grievance when they nonetheless address the grievance on the merits.
> *See id.* at 325. We have also explained that the purpose of the PLRA's
> exhaustion requirement "is to allow prison officials 'a fair opportunity'
> to address grievances on the merits to correct prison errors that can and
> should be corrected to create an administrative record for those disputes
> that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where
he notifies the relevant prison . . . staff" regarding the specific factual claim "giving
the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For
example, grieving a doctor about his failure to give cardiac catheterization failed to
grieve the claim that the doctor erred by not prescribing Ranexa.

**IV. Analysis**

A review of the record indicates that OmarHill never filed a grievance against Defendant Neayeart asserting his retaliation claims.  OmarHill attached **grievance LMF-2001-0043-17I** to his complaint.  (ECF No. 1-1, PageID.6-8.)  That grievance was for his failure to receive his transcripts from the law library.  But OmarHill alleges that Defendant Neayeart retaliated against him *because* he filed **grievance LMF-2001-0043-17I.**  That grievance could not have exhausted his retaliation claims against Defendant Neayeart, even if the grievance had proceeded through Step III of the grievance process.

Defendant attached a Step III Grievance Report to his brief in support of his motion for summary judgment.  This report shows that OmarHill did not exhaust any grievance through Step III of the grievance process.  (ECF No. 16-3, PageID.71.)  Although OmarHill has made some allegations that he was intimidated and threatened into withdrawing **grievance LMF-2001-0043-17I**, those allegations are unverified. Here, OmarHill has not put forth any evidence to support an argument that threats and intimidation made the grievance process unavailable. OmarHill made several allegations in his unverified complaint and his pleadings[3], but "unverified complaints are not considered Rule 56 evidence."  *Zeune. v. Mohr*, 2015

---

[3]    OmarHill did not submit a verified complaint under the requirements set forth in 28 U.S.C. § 1746.  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment.)  OmarHill failed to include the statement that "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date). (Signature)." 28 U.S.C. § 1746.

WL 6468541, at \*6 (S.D. Ohio 2015); *see also Jackson v. Kline*, 2017 WL 2262502, at

\*3 (E.D. Mich. 2017) ("[U]nverified complaints like the one at issue cannot be

considered Rule 56 evidence."). Similarly, OmarHill also failed to attach any other

admissible evidence to any of his filings, such as depositions, affidavits and

declarations, stipulations, admissions, or interrogatory answers to any of his filings.

Fed. R. Civ. P. 56.

Finally, and most importantly, it is undisputed that OmarHill simply failed to

pursue a grievance against Defendant Neayeart.

## VIII.  Recommendation

The undersigned respectfully recommends that this Court grant Defendant

Neayeart's motion for summary judgment and dismiss the complaint.

Dated:   November 9, 2020                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.
72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR
72.3(b).  Failure to file timely objections may constitute a waiver of any further right
of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*,
474 U.S. 140 (1985).